**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| WILLIAM L. PICKARD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 06-1043 (RJL) |
| ) | |
| MICHAEL O. LEAVITT, ) | |
| Secretary of Health and Human Services, et al., ) | |
| ) | |
| Defendants. ) | |
| _____) | |

**DEFENDANTS' MOTION TO DISMISS**

Defendants Michael O. Leavitt, in his official capacity as Secretary of Health and Human Services, Andrew von Eschenbach, in his official capacity as Acting Commissioner of the Food and Drug Administration, Alberto Gonzales, in his official capacity as Attorney General, and Karen Tandy, in her official capacity as Administrator of the Drug Enforcement Administration, respectfully request that this Court dismiss Plaintiff's claims in their entirety for lack of subject matter jurisdiction and failure to state a claim for which relief can be granted.

December 7, 2006                    Respectfully submitted,

                                                /s/
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney

                                                /s/
RUDOLPH CONTRERAS, DC BAR #434122
Assistant United States Attorney

                                                /s/
JOHN F. HENAULT, D.C. Bar # 472590
Assistant United States Attorney
555 4th Street, N.W.
Washington, DC 20530
(202) 307-1249
(202) 514-8780 (facsimile)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WILLIAM L. PICKARD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 06-1043 (RJL) |
| ) | |
| MICHAEL O. LEAVITT, ) | |
|   Secretary of Health and Human Services, et al., ) | |
| ) | |
| Defendants. ) | |
| _____) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

Pro se plaintiff William F. Pickard[1] seeks a declaratory judgment against defendants Michael O. Leavitt, in his official capacity as Secretary of Health and Human Services (HHS), Andrew von Eschenbach, in his official capacity as Acting Commissioner of the Food and Drug Administration (FDA), Alberto Gonzales, in his official capacity as Attorney General, and Karen Tandy, in her official capacity as Administrator of the Drug Enforcement Administration (DEA) (collectively, defendants), based on their alleged failure to respond to plaintiff's request that the drug PT-141 be scheduled as a controlled substance under emergency scheduling provisions of the Controlled Substances Act. For the reasons set forth herein, defendants respectfully request

---

[1] Plaintiff is currently serving a life sentence for conspiracy to manufacture and distribute more than 10 grams of LSD from August 1999 to November 2000 and for possession with intent to distribute more than 10 grams of LSD on November 6, 2000.  United States v. Pickard, 289 F. Supp. 2d 1140 (D. Kan. 2003) ("In addition, pursuant to 21 U.S.C. § 841(b)(1)(A), the court must sentence the defendant to a mandatory term of life imprisonment on each conviction."), aff'd, United States v. Apperson, 441 F.3d 1162 (10th Cir. 2006) ("In any event, Pickard admitted in this case the fact of his two prior drug-related convictions. That admission, combined with the jury's drug quantity findings, rendered him subject to a mandatory term of life imprisonment on each of his two counts of conviction pursuant to 21 U.S.C. § 841(b)(1)(A).").

that this Court dismiss plaintiff's claims in their entirety for lack of subject matter jurisdiction and failure to state a claim for which relief can be granted.

## STATUTORY FRAMEWORK

The DEA is the lead Federal agency responsible for enforcing the Controlled Substances Act ("CSA"), including final action to add a substance to the schedules established by section 202 of the CSA, 21 U.S.C. § 812. The CSA sets forth two schemes by which a substance can be added to the schedules established by section 202 of the CSA, 21 U.S.C. § 812. Section 811(a) authorizes DEA to add a substance to a schedule by rule if certain criteria are met.[2] Before initiating proceedings to control a drug under 21 U.S.C. § 811(a), DEA is required to request from the Secretary of HHS a medical and scientific evaluation as to whether the drug or other substance should be controlled and a recommendation as to under which schedule. 21 U.S.C. § 811(b). Administrative responsibilities for evaluating a substance for control under the CSA are performed, in part, by FDA for HHS.

As an alternative to scheduling under 21 U.S.C. § 811(b), the CSA provides for temporary scheduling of a drug if necessary to avoid an imminent hazard to the public safety. 21 U.S.C. § 811(h). This type of "emergency scheduling" is at issue in this case. Under 21 U.S.C. § 811(h), DEA may, by order, schedule a substance without seeking input from the Secretary of HHS under § 811(b). The temporary or "emergency" scheduling provision of the CSA allows DEA to place certain substances in Schedule I for a limited period of time (one year

---

[2] Proceedings for the issuance, amendment or repeal of such rules may be initiated by DEA (1) on its own motion, (2) at the request of the Secretary of HHS, or (3) on the petition of any interested party. 21 U.S.C. § 811(a). However, a final decision to schedule a drug resides only with the DEA.

with a possibility of a six-month extension) to avoid an imminent hazard to the public safety. 21 U.S.C. § 811(h). During the 12 to 18 month period, DEA (with input from HHS as necessary) must determine whether the substance warrants permanent control under the CSA under the process set out in 21 U.S.C. § 811(a), as discussed above.

In order to emergency schedule any substance under Section 811(h), DEA is required to make a finding that the substance is an imminent hazard to the public safety. See 21 U.S.C. § 811(h). To make that determination, Factors 4 - 6 in 21 U.S.C. § 811(c) must be considered: Factor 4 - its history and current pattern of abuse; Factor 5 - the scope, duration and significance of abuse; and, Factor 6 - what, if any, risk this substance poses to the public health. See 21 U.S.C. § 811(c)&(h)(3). In addition, the substance cannot be: (1) "listed in any other schedule in section 202 [21 USCS § 812]," or (2) be the subject of either an exemption or an approval under Section 505 of the Federal Food, Drug, and Cosmetic Act (FDCA), 21 U.S.C. § 355.

The referenced section of the FDCA, 21 U.S.C. § 355, prohibits distribution in interstate commerce of any "new drug," as defined in 21 U.S.C. § 321(p), unless an approval of a marketing application filed pursuant to 21 U.S.C. § 355(b) or (j) is in effect for such drug. See 21 U.S.C. §§ 331(d), 355(a). The FDCA includes a mechanism through which drugs can be studied in order to gather the data necessary to support approval of a marketing application. Specifically, under 21 U.S.C. § 355(i)(1), the Secretary is authorized "to promulgate regulations for *exempting* from the operation of the foregoing subsections of this section drugs intended solely for investigational use by experts qualified by scientific training and experience to investigate the safety and effectiveness of drugs." 21 U.S.C. § 355(i)(1) (emphasis added).

Under FDA's regulations, an investigational new drug for which an investigational new drug application (IND) is in effect is exempt from the premarketing approval requirements that are otherwise applicable and may be shipped lawfully for the purpose of conducting clinical investigations of that drug. 21 U.S.C. § 355(i)(1); 21 C.F.R. § 312.1(a).

As noted above, the emergency scheduling provision in 21 U.S.C. § 811(h) permits such scheduling if, among other things, "no exemption or approval is in effect for the substance under [21 U.S.C. § 355]." Thus, if an exemption (i.e., IND) or approval (i.e., new drug application or abbreviated new drug application) is in effect for a particular substance, that substance *cannot* be scheduled under the mechanism in 21 U.S.C. § 811(h).

## FACTUAL BACKGROUND

As set forth below, Plaintiff alleges that defendants failed to properly respond to petitions to schedule PT-141 (bremelanotide) as a controlled substance. Plaintiff alleges that PT-141 is a "melanocortin agonist being developed by Palatin Technologies, Inc. . . . as a libido-enhancing compound for treatment of sexual dysfunction . . . ." Compl. ¶ 2.

**I.    FACTS RELATING TO FDA AND HHS**

On August 27, 2005, Plaintiff submitted a letter and an attached affidavit to then FDA Commissioner, Lester M. Crawford, D.V.M., Ph.D. The letter states, "By and through this correspondence, you are hereby provided an affidavit in support of a request for emergency scheduling of the drug PT-141." The affidavit reiterates that Pickard sought "emergency scheduling of [PT-141] pursuant to the Controlled Substances Act . . . ." Pickard Aff. ¶¶ 2, 8, 36-37. In support of his request, Pickard asserted that PT-141 presents an imminent threat to the

public health, based primarily on the potential for the drug being abused.  See, e.g., Pickard Aff. ¶¶ 1, 3, 35-37, 42.

## II.    FACTS RELATING TO DEA AND THE DEPARTMENT OF JUSTICE

On August 27, 2005, Plaintiff purportedly forwarded an affidavit which requested an order for the emergency scheduling of PT-141.  See Compl. Exhibit C-1.  On September 9, 2005, William Rork, on behalf of Plaintiff, forwarded an affidavit from Plaintiff regarding "his suggestions that the PT-141 drug be emergency scheduled."  See Compl. Exhibit C-2.

On November 16, 2005, Christine Sannerud, Chief of DEA's Drug and Chemical Evaluation Section, informed Mr. Rork by letter that DEA did not have the means available to administratively schedule PT-141 under the CSA.  See Compl. Exhibit B.  On the same date, the DEA Administrator's office received a petition from Mr. Rork on behalf of Plaintiff dated November 9, 2005 for the emergency scheduling of PT-141.

On November 21, 2006, DEA accepted the Plaintiff's petition for filing.[3]  On December 1, 2006, the Deputy Administrator denied the petition on the bases that there was not sufficient evidence to support a finding that PT-141 was an imminent hazard to the public safety[4] and the

---

[3]  Although Plaintiff purportedly sent three affidavits to DEA, all three affidavits petition for the same relief – for DEA to emergency schedule PT-141.  Thus, the affidavits were treated as one petition.

[4]  As explained by the DEA in its December 1, 2006 letter, there is no history of bremelanotide abuse in the U.S., nor is there sufficient data to determine what risks this substance poses to the public safety.  There is no forensic laboratory data [STRIDE (System to Retrieve Information from Drug Evidence) or NFLIS (National Forensic Laboratory Information System)] that indicate that this substance is being seized by law enforcement personnel.  The most recent 2004 Drug Abuse Warning Network (DAWN) did not identify any emergency room episodes associated with bremelanotide, nor has it been reported by poison control centers.  Neither the high school survey (Monitoring the Future, MTF) nor the household survey (National Survey on Drug Use and Health, NSDUH) reported abuse of this substance.  A literature search revealed no medical or scientific reports of bremelanotide abuse.

fact that PT-141 is the subject of an IND exemption.[5]  See Letter from Michele Leonhart, Deputy Administrator, DEA to William Rork, dated Dec. 1, 2006 (copy attached).

## LEGAL STANDARDS

**I.      12(b)(1) STANDARD**

On a motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), Plaintiff bears the burden of establishing that the court has subject-matter jurisdiction.  Rasul v. Bush, 215 F. Supp. 2d 55, 61 (D.D.C. 2002) (citing McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 182-83 (1936)).  Because subject-matter jurisdiction focuses on the court's power to hear the claim, the court must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a claim.  Macharia v. United States, 334 F.3d 61, 64, 69 (D.C. Cir. 2003); Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001).  Moreover, the court is not limited to the allegations contained in the complaint.  Hohri v. United States, 782 F.2d 227, 241 (D.C. Cir. 1986), vacated on other grounds, 482 U.S. 64 (1987).  Instead, to determine whether it has jurisdiction over the claim, the court may consider materials outside the pleadings. Herbert v. Nat'l Acad. of Sciences, 974 F.2d 192, 197 (D.C. Cir. 1992).

**II.     12(b)(6) STANDARD**

A Rule 12(b)(6) motion tests the legal sufficiency of a complaint and dismissal is appropriate where the "plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Browning v. Clinton, 292 F.3d 235, 241 (D.C. Cir. 2002) (quoting Conley

---

[5]  Plaintiff's petition acknowledges that PT-141 is the subject of clinical trials.  Pickard Aff. ¶¶ 2, 8.

6

v. Gibson, 355 U.S. 41, 45-46 (1957)).  The Court is to treat the complaint's factual allegations as true, see Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993), and must grant plaintiff "the benefit of all inferences that can be derived from the facts alleged," Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir.1979).  However, "the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by the facts alleged in the complaint, nor must the Court accept the plaintiff's legal conclusions."  Akintomide v. United States, 99-MS-0055 (PLF), 2000 WL 1693739, at *1 (D.D.C. Oct. 31, 2000) (citing National Treasury Employees Union v. United States, 101 F.3d 1423, 1430 (D.C. Cir. 1996) and Kowal v. MCI Communication Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994)).

## ARGUMENT

**I.     PLAINTIFF'S CLAIMS AGAINST THE DEA AND DOJ FAIL FOR LACK OF SUBJECT MATTER JURISDICTION**

Under Article III, section 2 of the Constitution, federal courts only have jurisdiction to hear and decide actual "cases" or "controversies."  Allen v. Wright, 468 U.S. 737, 750 (1984); National Black Police Association v. District of Columbia, 108 F.3d 346, 349 (D.C. Cir. 1997).  This requirement prevents the issuance of advisory opinions, as it demands the existence of an actual dispute between adverse parties with a stake in the outcome.  See Richardson v. Ramirez, 418 U.S. 24, 36 (1974); see also City of Erie v. Pap's A.M., 529 U.S. 277, 305-06 (2000) (Scalia, J. concurring).  In fact, "[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases and controversies."  Simon v. Eastern Kentucky Welfare Rights Org., 426 U.S. 26, 37 (1976) (citing Flast v. Cohen, 392 U.S. 83, 95 (1968)).

The case-or-controversy requirement subsists "through all stages of federal judicial proceedings." Lewis v. Continental Bank Corp., 494 U.S. 472, 477 (1990). The effect of post-complaint changes in the facts or law on the continued existence of a particular controversy are assessed through the lens of mootness. See Arizonans for Official English v. Arizona, 520 U.S. 43, 68 n.22 (1997) (quoting United States Parole Comm'n v. Geraghty, 445 U.S. 388, 397 (1980)).

As the Supreme Court has stated, "federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them." DeFunis v. Odegaard, 416 U.S. 312, 316 (1974) (quoting North Carolina v. Rice, 404 U.S. 244, 246 (1971)); National Black Police Association, 108 F.3d at 349. This inability of the federal judiciary "'to review moot cases derives from the requirement of Article III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy.'" DeFunis, 416 U.S. at 316 (quoting Liner v. Jafco, Inc., 375 U.S. 301, 306 n.3 (1964)); see also City of Houston v. Department of Housing and Urban Development, 24 F.3d 1421, 1426 (D.C. Cir. 1994) ("Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies") (quoting Iron Arrow Honor Soc'y v. Heckler, 464 U.S. 67, 70 (1983)).

"Article III, Section 2 of the Constitution permits federal courts to adjudicate only 'actual, ongoing controversies.' If events outrun the controversy such that the court can grant no meaningful relief, the case should be dismissed as moot." McBryde v. Committee to Review Circuit Council Conduct and Disability Orders of the Judicial Conference of the United States, 264 F.3d 52, 55 (D.C. Cir. 2001) (citations omitted); see also Pharmachemie B.V. v. Barr

Laboratories, Inc., 276 F.3d 627, 631 (D.C. Cir. 2002); Fraternal Order of Police v. Rubin, 134 F. Supp.2d 39, 41 (D.D.C. 2001) (further noting that no justiciable controversy is presented when the question to be adjudicated as been mooted by subsequent developments). In other words, the controversy must exist at the outset of the litigation and continue throughout the existence of the suit. See Columbian Rope Company v. West, 142 F.3d 1313, 1316 (D.C. Cir. 1998) (citing Arizonans for Official English, 520 U.S. 43). As this Circuit has explained:

> [E]ven where litigation poses a live controversy when filed, the [mootness] doctrine requires a federal Court to refrain from deciding it if "events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future."

Columbian Rope, 142 F.3d at 1316 (quoting Clarke v. United States, 915 F.2d 699, 701 (D.C. Cir. 1990) (en banc)). See also Westmoreland v. National Transportation Safety Board, 833 F.2d 1461, 1462 (11th Cir. 1987) ("When effective relief cannot be granted because of later events, the appeal must be dismissed as moot.") (citing Murphy v. Hunt, 455 U.S. 478, 481 (1982)).

Plaintiff's complaint in this action, as it relates to the DEA and DOJ, seeks a declaratory judgment that DEA failed to respond to his petition and an order compelling DEA to properly respond to his petition. As explained above, on November 21, 2006, DEA accepted the Plaintiff's petition for filing. On December 1, 2006, the Deputy Administrator of the DEA denied the petition on the bases that there was not sufficient evidence to support a finding that PT-141 was an imminent hazard to the public safety and the fact that an IND exemption had been filed with the FDA. Accordingly, the DEA has properly responded to Plaintiff's request for

emergency scheduling, and his claims against the DEA are subject to dismissal for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1).[6]

## II.  PLAINTIFF'S CLAIMS AGAINST THE FDA AND HHS SHOULD BE DISMISSED

Mr. Pickard alleges that FDA and HHS failed to respond to his petition and that such failure constitutes final agency action. Compl. ¶¶ 22, 28, 66. He seeks, among other things, a declaratory judgment that HHS and FDA failed to properly respond to his request for emergency scheduling of PT-141 as a controlled substance, under 21 U.S.C. § 811(h)(1). Compl. ¶ 130. He also seeks an order compelling a response under that provision, including an "explanation based on the scientific, medical, and technical merits of Plaintiff's petition." Compl. ¶ 134.

All of Plaintiff's claims based on failure to respond to his petition for emergency scheduling are moot for the reasons discussed above. Even if they were not moot, his claims against FDA and HHS cannot proceed. As noted above, the DEA is the lead Federal agency responsible for enforcing the CSA, including final action to add a substance to the schedules established by section 202 of the CSA, 21 U.S.C. § 812. While DEA is required to consult with

---

[6] This Circuit has held on several occasions that where a plaintiff files a complaint seeking agency action, and the action is taken subsequent to the filing of the complaint, the case should be dismissed on mootness grounds. For example, in Action on Smoking and Health v. Department of Labor, 28 F.3d 162, 163 (D.C. Cir. 1994), the plaintiff claimed that OSHA had "unreasonably delayed" in initiating a rulemaking proceeding. Once OSHA issued a notice of proposed rulemaking, however, the Court found it unnecessary to reach the merits of the claim and dismissed on the basis of mootness. Id. at 164. Similarly, in Shoreham-Wading River Central School District v. United States Nuclear Regulatory Commission, 931 F.2d 102, 104 (D.C. Cir. 1991), petitioners filed a claim for relief based upon the Nuclear Regulatory Commission's "failure to decide" a request for action under 10 C.F.R. § 2.206. Once the Commission issued the final decision, "the unlawful delay claim [was] therefore moot." See also In re International Union, United Mine Workers of America, 231 F.3d 51, 54 (D.C. Cir. 2000); In re Arcadian Corp., 1995 WL 626501 (D.C. Cir. Oct. 4, 1999) (dismissing as moot petition to compel issuance of OSHA decision once decision rendered and entered into the public record); Associated Builders & Contractors, Inc. v. Herman, 976 F. Supp. 1, 8 (D.D.C. 1997) (claim attacking delay moot once rulemaking issued).

HHS as part of the process of scheduling a drug under 21 U.S.C. § 811(a)&(b), neither HHS nor FDA has the statutory authority to classify a drug as a controlled substance under the emergency scheduling provisions in 21 US.C. § 811(h). . See Browning, 292 F.3d at 241 (12(b)(6) dismissal appropriate where "plaintiff can prove no set of facts in support of his claim which would entitle him to relief").

Moreover, to the extent that Plaintiff seeks declaratory or injunctive relief against any of the defendants for "failure to respond properly to [his] request for emergency scheduling" of PT-141, his claims must fail because the plain statutory language of the CSA precludes emergency scheduling of that drug. As discussed previously, the CSA confines the authority for emergency scheduling under § 811(h) to drugs that are *neither* approved *nor* exempt under section 505 of the FDCA, 21 U.S.C. § 355:

> If the Attorney General finds that the scheduling of a substance in schedule I on a temporary basis is necessary to avoid an imminent hazard to the public safety, he may, by order and without regard to the requirements of subsection (b) relating to the Secretary of Health and Human Services, schedule such substance in schedule I if the substance is not listed in any other schedule in section 202 [21 USCS § 812] or **if no exemption or approval is in effect for the substance under section 505 of the Federal Food, Drug, and Cosmetic Act [21 USCS § 355]**....

21 U.S.C. § 811(h)(1) (emphasis added). PT-141 is the subject of an IND exemption under 21 U.S.C. § 355(i). See Letter from Michele Leonhart, Deputy Administrator, DEA to William Rork, dated Dec. 1, 2006; see also Pickard Aff. ¶ 2 ("The drug PT-141 is now undergoing Phase 2B clinical trials . . . ."). Thus, PT-141 is ineligible for scheduling under 21 U.S.C. § 811(h).[7]

---

[7] Plaintiff appears to misread 21 U.S.C. § 811(h) as applying only to approved drugs, and not drugs exempt under an IND. See Pickard Aff. ¶¶ 6-7; Compl. ¶ 15-16 ("Defendants DOJ and DEA failed to acknowledge that the CSA pathway for emergency scheduling is inapplicable to a drug approved by FDA, and applicable to a currently unapproved drug such as bremelanotide."); id. ¶¶ 49, 51, 80. This reading is contrary to the plain language of the statute.

Accordingly, Plaintiff has failed to state a claim for which relief can be granted against FDA and HHS.

## **CONCLUSION**

For the reasons discussed above, plaintiff's complaint should be dismissed in its entirety for lack of subject matter jurisdiction and failure to state a claim for which relief may be granted.

| | |
|---|---|
| December 7, 2006 | Respectfully submitted, |

                                          /s/
                                JEFFREY A. TAYLOR, D.C. Bar # 498610
                                United States Attorney

                                          /s/
                                RUDOLPH CONTRERAS, DC BAR #434122
                                Assistant United States Attorney

                                          /s/
                                JOHN F. HENAULT, D.C. Bar # 472590
                                Assistant United States Attorney
                                555 4th Street, N.W.
                                Washington, DC 20530
                                (202) 307-1249
                                (202) 514-8780 (facsimile)

**CERTIFICATE OF SERVICE**

  I certify that on December 7, 2006, a true and correct copy of the foregoing was sent by first class mail to:

William L. Pickard
13777 Air Expressway Blvd.
PO Box 5500
Adelanto, CA 92301

                 _____
                 John F. Henault
                 Assistant United States Attorney